UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VAN ANDEL INSTITUTE and
VAN ANDEL RESEARCH INSTITUTE,

      Plaintiffs,

v.

THORNE RESEARCH, INC.,

      Defendant.
_____/

File No. 1:12-CV-731

HON. ROBERT HOLMES BELL

**O P I N I O N**

On July 16, 2010, Plaintiffs Van Andel Institute and Van Andel Research Institute (collectively, "VAI") filed a complaint in this Court against Defendant Thorne Research, Inc. alleging two counts of trademark infringement under 15 U.S.C. §§ 1114 and 1125, and one count of unfair competition under Michigan common law. (Dkt. No. 1.)  This matter is before the Court on Defendant Thorne Research, Inc.'s motion to transfer venue to the District of Idaho or stay proceedings. (Dkt. No. 10.)  For the reasons that follow, this motion will be denied.

**I.**

Thorne, an Idaho company, manufactures and sells dietary supplements for oncology patients. (Dkt. No. 9, Answer ¶ 3.)  On February 7, 2012, Thorne filed an intent-to-use trademark application in the United States Patent and Trademark Office ("USPTO") for its OncoQOL design mark. (*Id.* at ¶ 10.)

On March 21, 2012, VAI, a charitable trust that engages in cancer research and education, sent Thorne a cease-and-desist letter on account of the OncoQOL design mark's similarities to VAI's trademarked designs. (*Id.* at ¶¶ 2, 12; Dkt. No. 14, Ex. A.) Following Thorne's receipt of this letter, the parties engaged in settlement negotiations. (Dkt. No. 11, at 3; Dkt. No. 13, at 2.) During these negotiations Thorne submitted a proposed redesign to VAI. (Dkt. No. 14, Ex. B.) VAI found this redesign acceptable, but Thorne decided to keep the original design. (*Id.*; Dkt. No. 11, at 4.) Settlement negotiations broke down on May 2, 2012. (Dkt. No. 14, Ex. F.) That same day, Thorne filed suit in an Idaho district court for declaratory judgment of non-infringement. (Dkt. No. 9, Answer ¶ 12.)

## II.

### A. Transfer

Thorne argues that there are two alternative justifications for dismissing this case in favor of the Idaho litigation and/or transferring this case to the District of Idaho: (1) the first-to-file rule provides that the first filed matter in the District of Idaho should proceed instead of this case; and/or (2) 28 U.S.C. § 1404(a) provides that this case should be transferred to the District of Idaho because it is a more convenient venue. Neither purported basis supports the transfer of this case.

#### 1. First-to-File Rule

"The [first-to-file] rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was

filed should generally proceed to judgment." *Zide Sport Shop of Ohio v. Ed Tobergte Assocs.*, 16 F. App'x 433, 437 (6th Cir. 2001). "However, District courts have the discretion to dispense with the first-to-file rule where equity so demands. A plaintiff, even one who files first, does not have a right to bring a declaratory judgment action in the forum of his choosing." *Id.* "[A] suit brought purely in anticipation of a filing by the defendant in another forum should be dismissed." *Kmart Corp. v. Key Indus.*, 877 F.Supp. 1048, 1053 (E.D. Mich. 1994). "Factors that weigh against enforcement of the first-to-file rule include extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping." *Zide*, 16 F. App'x at 437.

Thorne contends that the first-to-file rule applies here because the Idaho declaratory judgment action was brought first and involves the same parties and issues. It contends that the exceptions to the first-to-file rule are inapplicable because the rule is relaxed in trademark suits where a declaratory judgment action is not anticipatory but instead serves a "useful purpose." (Dkt. No. 11, at 6 (quoting *AmSouth Bank v. Dale*, 386 F.3d 786 (6th Cir. 2004).) In *AmSouth*, the Sixth Circuit held that "[n]ormally, when a putative tortfeasor sues an injured party for a declaration of nonliability, courts will decline to hear the action in favor of a subsequently-filed coercive action by the 'natural plaintiff.'" 386 F.3d at 786. Here, there is no dispute that VAI is the "natural plaintiff." However, the Sixth Circuit continued as follows:

> This general rule is subject to exception when some additional harm, not merely waiting for the natural plaintiff to sue, will befall the declaratory

3

> plaintiff in the meantime. That is, a party who wants, for example, to embark on a marketing campaign, but has been threatened with suit over trademark infringement, can go to court under the Declaratory Judgment Act and seek a judgment that it is not infringing that trademark, thereby allowing it to proceed without the fear of incurring further loss.

*Id.* Thorne contends that it was preparing to market and sell a new product line in the summer under the accused design mark and that it filed the declaratory judgment action to protect its ability to proceed with these sales.

This argument is not convincing because by all indications the filing of the lawsuit in Idaho was for anticipatory reasons and not to prevent harm to a summer marketing and sales campaign. While Thorne waited over a month and a half from the time it received the cease-and-desist letter to file its declaratory judgment action, this was not because it was "merely waiting for the natural plaintiff to sue" and could not afford to continue suffering harm. Instead, the wait was because it was engaged in settlement negotiations with VAI. The moment these negotiations broke down Thorne sued. Moreover, there is some doubt as to whether Thorne was negotiating in good faith or instead delaying in order to draft a complaint and complete internal preparations for suit.

During these negotiations Thorne submitted a proposed redesign which VAI found acceptable. While Thorne emphasized that it was not committing to the new logo, VAI was under the assumption that it would commit to the logo if acceptable to VAI. Thus, VAI's counsel, David Whitescarver, sent an email on April 22, 2012, to Thorne's counsel, Kim Pearson, indicating an assumption that the parties had reached a settlement: "The attached

4

redesigned logo is acceptable to VAI. We also think it looks better than the previous one! On this basis, we have a deal. Good luck and many thanks." (Dkt. No. 14, Ex. B.) Despite what appears to have been a habit of regular communication between the two parties during April, it took three days for Pearson to respond to this email. When she did respond, Pearson stated that Thorne had not shown the logo to its collaborator yet, that it would need the collaborator's approval, and that this would take multiple days because the collaborator was based in Switzerland. (Dkt. No. 14, Ex. C.) According to Whitescarver, it was not until late in the day on May 2 that Thorne advised VAI via telephone call that the collaborator would not approve the new logo. (Dkt. No. 14, Whitescarver Aff. ¶ 6.)

Earlier that day, at 9:09 a.m., Pearson, had sent another proposed settlement option via email, asking if it would be acceptable to VAI if Thorne abandoned its trademark application but continued to use the design mark. (Dkt. No. 14, Ex. D.) According to Whitescarver, this proposal was discussed during the same phone conversation late in the day on May 2 during which Pearson revealed that the collaborator would not accept the redesign. (Dkt. No. 14, Whitescarver Aff. ¶ 7.) At this time, Whitescarver indicated that he would raise the offer with VAI although he did not believe it would be acceptable. (*Id.*) At 5:24 pm, shortly after that conversation, Pearson sent another email withdrawing the previous offer to withdraw the trademark application based on "our conversation of a few minutes ago." (Dkt. No. 14, Ex. E.) Two hours later, at 7:28 p.m., Pearson sent an email attaching a complaint filed in the District of Idaho. (Dkt. No. 15, Ex. F.)

5

This timeline indicates that it is far more likely that Thorne filed suit in Idaho to win the race to the courthouse rather than to protect itself from harm resulting from delay. First, Thorne's complaint in the declaratory judgment action does not allege any harm that VAI had caused Thorne or was about to cause Thorne, suggesting that the summer marketing campaign was not a motivating factor. (*Id.*) Second, the protracted settlement talks suggest that Thorne was not that worried about filing a lawsuit in advance of summer.

Third, the tone and timing of the emails during the end of April and early May suggest that Thorne was not seriously interested in settling, but was instead delaying, presumably so it could finish its complaint and receive internal approval to file suit. This is most noticeable on May 2 when Thorne withdrew two settlement options, one of which had been offered that morning, during a late day phone conversation and a follow-up email, and then proceeded to file suit within two hours. After spending a month and a half negotiating, it is unclear why Thorne would have felt the need to file such a suit so soon after settlement broke down (and at 7:30 at night) unless it was concerned about winning the race to the courthouse. Moreover, to be able to file suit that quickly, Thorne must have spent much of the previous month drafting the complaint and undertaking whatever internal steps were necessary for it to bring suit, which weakens its argument that it was negotiating in good faith. Fourth, Thorne's counsel stated in her affidavit that VAI's counsel told her during the phone conversation on May 2 that, because Thorne would not settle, VAI was going to add Thorne to a trademark infringement action. (Dkt. No. 10, Ex. 2, Pearson Aff. ¶ 7.) If VAI was going

6

to sue because of settlement talks breaking down, then Thorne's decision to bring suit within two hours again appears like an intent to win the race to the courthouse rather than to avoid harm resulting from delayed litigation.

When the first-filed suit is an anticipatory declaratory judgment action, it is not appropriate for a district court to dismiss a coercive action subsequently filed by the natural plaintiff. *See Zide*, 16 F. App'x at 437. Consequently, the Court, in its discretion, declines to enforce the first-to-file rule because the suit filed in Idaho is, by all indications, an anticipatory lawsuit.

**2. 28 U.S.C. § 1404(a)**

Alternatively, Thorne argues that transfer is warranted pursuant to 28 U.S.C. § 1404(a). "For convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it could have been brought." § 1404(a). The factors the Court must consider are (1) the convenience of the parties, (2) the convenience of the witnesses, (3) the relative ease of access to sources of proof, (4) the availability of process to compel attendance of unwilling witnesses, (5) the cost of obtaining willing witnesses, (6) the practical problems associated with trying the case most expeditiously and inexpensively, and (7) the interests of justice. *See, e.g.*, *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009); *L. Perrigo Co. v Warner-Lambert Co.*, 810 F.Supp. 897, 900 (W.D. Mich. 1992). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Reese*, 574 F.3d at 320

As a preliminary matter, Thorne argues that the location of the alleged infringer, Idaho in this case, is critical in determining whether to transfer a trademark infringement suit. (Dkt. No. 11, at 8.) "[I]ntellectual property infringement suits often focus on the activities of the alleged infringer, its employees, and its documents; therefore the location of the alleged infringer's principal place of business is often the critical and controlling consideration in adjudicating transfer of venue motions." *Scooter Store, Inc. v. Spinlife.com, LLC*, No. 2:10-CV-00018, 2010 WL 3489013, at *4 (S.D. Ohio, Sept. 1, 2010). However, this proposition is not widely followed; most district courts do not attach much weight to the alleged infringer's principal place of business, except to the extent it impacts the factors listed above.

The convenience of parties factor is neutral. Thorne is a corporation, while VAI is a large charitable trust. Both parties could travel for litigation, and thus the convenience of parties factor does not favor one party over the other.

"[T]he convenience of witnesses, is the most important factor in a discretionary transfer-of-venue analysis." *Cincinnati Ins. Co. v. O'Leary Paint Co., Inc.*, 676 F.Supp.2d 623, 634 (W.D. Mich. 2009). It is unclear at this stage which witnesses will be relied upon by Thorne other than "Thorne[] employees" that reside in or work in Idaho. (Dkt. No. 11, at 9.) VAI, on the other hand, has named multiple VAI executives located in Michigan whom it intends to call. (Dkt. No. 14, Whitescarver Aff. ¶ 10.) VAI also names multiple third parties located in Michigan, primarily local universities and health systems, which it intends to call. (*Id.* at ¶ 11.) Because this suit concerns VAI's alleged loss of reputation and

goodwill, it appears that the testimony of these third parties (or, in the alternative, other third parties in Michigan) will be essential to the suit.[1] Thus, because there are likely to be third party witnesses who reside in Michigan, the convenience of witnesses factor weighs in favor of VAI.

As for convenience of evidence, Thorne is correct that all of its evidentiary records reside in Idaho. However, "the location of documentary evidence is a minor consideration." *United States v. Cinemark USA, Inc.*, 66 F. Supp. 2d 881, 890 (N.D. Ohio 1999). In any case, VAI's documentary proof is located in Michigan. Thus, this factor is neutral.

Neither party spends much time addressing availability of process, costs of securing attendance, or practical problems. VAI does cite a statistic that the median time interval from the filing of a civil case to its disposition is 6.3 months in the Western District of Michigan but 10.2 months in the District of Idaho. (Dkt. No. 13, 8-9.) This statistic weighs slightly in favor of VAI, but, as a whole, these factors appear neutral.

As for the last factor, the interests of justice, Thorne's argument consists of the plain statement that Idaho has an interest because this is a local controversy. (Dkt. No. 11, at 9.) That is not convincing because this is not a local matter and, if anything, the controversy affects Michigan more since that is where the alleged loss of goodwill and reputation would

---

[1] During oral arguments Thorne argued that the testimony of these proposed witnesses would not be admissible during a trial. This argument is speculative, and the Court does not reach it here. It is plausible that the testimony of these witnesses would be admissible, or alternatively other third party witnesses residing in Michigan, which is enough at this stage for the Court to consider the convenience of these proposed witnesses for the purposes of a § 1404(a) analysis.

be occurring. VAI argues that efficiency would be served by folding Thorne's declaratory judgment into the present, more comprehensive action, as a counterclaim. (Dkt. No. 13, at 9.) This makes more sense than folding the present, more comprehensive suit into the one count declaratory judgment action filed in Idaho. Additionally, VAI argues that expenses should not be shifted from a private, for-profit corporation to a charitable trust. (*Id.*) It is unclear how much weight this difference between VAI and Thorne merits, but any weight in favor of VAI from this fact is minimal at best. Lastly, VAI points out that Thorne has admitted personal jurisdiction here, while there is a pending motion to dismiss for lack of jurisdiction in the Idaho suit. (*Id.*) This argument has some merit because there is a distinct possibility the Idaho suit will be dismissed. Thus, while the arguments advanced by VAI are not overwhelming, it appears that this factor slightly favors VAI.

In sum, most of the factors are neutral or slightly favor VAI. However, the convenience of witnesses, the factor courts find the most important, favors VAI. Given the deference due to a plaintiff's choice of forum and the direction the factors point, the Court will decline to transfer venue pursuant to § 1404(a).

**B. Stay**

Thorne asks the Court, if it will not transfer this suit, to stay the matter. Contradicting its earlier arguments, Thorne argues here that the District of Idaho is the proper court to decide whether to apply the first-to-file rule, thus warranting a stay by this Court until that decision is made. (Dkt. No. 11, at 10.) There is support for this proposition. *See*, *e.g.*,

10

*Versus Tech., Inc. v. Hillenbrand Idus., Inc.*, No. 1:04-CV-168, 2004 WL 3457629, at *6 (W.D. Mich., Nov. 23, 2004) (Quist, J.) ("[I]t is generally accepted that the court which first obtained jurisdiction should determine whether to apply the first-to-file rule."); *Bender v, Newell Window Furnishings, Inc.*, No. 1:06-CV-113, 2007 WL 2025780, at *2 (W.D. Mich., July 9, 2007) (Quist, J.).

However, neither of those cases involved the present situation where the first-filed suit seeks only declaratory relief. Moreover, in a decision issued after the two decisions by Judge Quist just cited, the Sixth Circuit held that the district court in the underlying action should have applied the first-to-file rule rather than deferring to a first-filed declaratory action:

> In this case, a proper application of the first-to-file rule would have led the district court to the conclusion that comity did not counsel against issuing a preliminary injunction. The Ohio action filed by Defendants was the very kind of anticipatory suit which should not have been given deference under the first-to-file rule.

*Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 552 (6th Cir. 2007).

Thus, when the first-filed suit is an anticipatory declaratory action and the second-filed suit is a coercive action, the Sixth Circuit supports not only having the second district court apply the first-to-file rule, but also having that court conclude that the first-filed suit should not receive deference under the first-to-file rule. As that is the case here, Thorne's motion to stay will be denied.

## III.

In sum, Thorne's motion will be denied in its entirety. The first-to-file rule does not favor dismissal in favor of the litigation in Idaho because the first-filed suit there is an anticipatory declaratory action. Nor does consideration of the factors listed in § 1404(a) favor transfer. Last, this Court will not stay proceedings until the District of Idaho applies the first-to-file rule because Sixth Circuit precedent favors coercive actions under the present circumstances.

An order consistent with this opinion will be entered.


Dated: November 14, 2012         /s/ Robert Holmes Bell
                                 ROBERT HOLMES BELL
                                 UNITED STATES DISTRICT JUDGE